UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL INSTITUTES OF HEALTH, et al.,<br><br>　　　　Defendants. | Civil Action No. 23-3674 (RBW) |
| INFORMED CONSENT ACTION NETWORK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL INSTITUTES OF HEALTH, et al.,<br><br>　　　　Defendants. | Civil Action No. 24-813 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Informed Consent Action Network, brought this Freedom of Information Act ("FOIA") action against the defendants, the National Institutes of Health ("NIH") and the United States Department of Health and Human Services ("HHS"), arising out of its FOIA requests for emails regarding the article titled "Antibodies to SARS-CoV-2 in All Of Us Research Program Participants, January 2-March 18, 2020." See Informed Action Consent Network v. Nat'l Insts. of Health, No. 23-cv-3674, Complaint ("ICAN I Compl.") at 1, ECF No. 1; Informed Action Consent Network v. Nat'l Insts. of Health, No. 24-cv-813, Complaint ("ICAN II Compl") at 1, ECF No. 1. Currently pending before the Court is the Plaintiff's

Motion for Attorneys' Fees and Costs ("Pl.'s Mot."), ECF No. 23. Upon careful consideration of the parties' submissions,[1] the Court concludes for the reasons below that it must deny the plaintiff's motion for attorneys' fees.

## I. BACKGROUND

### A. Factual Background

#### 1. FOIA Request 56560

On June 17, 2021, the plaintiff submitted a FOIA request to NIH requesting:

> All emails exchanged between Keri N. Althoff and David Schlueter dated between June 15, 2020[,] and June 15, 2021[,] regarding the article titled Antibodies to SARS-CoV2 in All Of Us Research Program Participants, January 2-March 18, 2020.

ICAN I Compl. ¶ 6 (citation omitted). That same day, NIH acknowledged receipt of the request and "assigned it Case Number 56560." Id. ¶ 7.

Subsequently, "[o]n May 26, 2022, [d]efendant HHS notified [the p]laintiff that its request was referred from NIH to the National Human Genome Research Institute ("NHGRI") within [ ] NIH." Id. ¶ 8. "On August 5, 2022, [the p]laintiff requested an estimated date of completion" for the processing of its FOIA request, id. ¶ 9, and "[o]n August 10, 2022, NIH responded to [the p]laintiff's request for an estimated date[] of completion stating, 'Given a review of the records, I am providing a date of September 21, 2022[,] as the estimate[d] date of completion[,]" id. ¶ 10. Then, "[o]n September 23, 2022, NIH contacted [the p]laintiff and advised it was extending its estimated date of completion to November 30, 2022." Id. ¶ 11. Having been provided no further update by the defendants on their progress in processing its

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Pl.'s Mem."), ECF No. 23-1; (2) the defendants' Opposition to Motion for Attorneys' Fees ("Defs.' Opp'n"), ECF No. 24; (3) the Declaration of Gorka Garcia-Malene ("Garcia-Malene Decl."), ECF No. 24-1; and (4) the Plaintiff's Reply Memorandum in Further Support of Motion for Attorneys' Fees and Costs ("Pl.'s Reply"), ECF No. 25.

request, on December 10, 2023, the plaintiff filed its Complaint in case number 23-3674 on December 10, 2023. See id. at 1.

2. **FOIA Request 56559**

Also on June 17, 2021, the plaintiff submitted a separatee FOIA request to NIH requesting:

> All emails exchanged between Keri N. Althoff, Kelly A. Gebo, and Sheri D. Schully dated between June 15, 2020[,] and June 15, 2021[,] regarding the article titled Antibodies to SARS-CoV2 in All Of Us Research Program Participants, January 2-March 18, 2020.

ICAN II Compl. ¶ 6. That same day, NIH acknowledged receipt of the request and "assigned it Case Number 56559." Id. ¶ 7. The defendants provided no further updates to the plaintiff regarding the processing of this request, see id. ¶ 8, nor did the plaintiff inquire as to the expected completion date of the defendants' processing of FOIA Request 56559, as it did with FOIA Request 56560, see generally ICAN II Compl. On March 20, 2024, the plaintiff filed its Complaint in case number 24-813. See id. at 1.

B.   **Procedural Background**

As indicated above, the plaintiff filed its Complaints in ICAN I and ICAN II on December 10, 2023, and March 20, 2024, respectively. See ICAN I Compl. at 1; ICAN II Compl. at 1. On June 17, 2024, the Court granted the parties' joint motion to consolidate ICAN I and ICAN II. See Order at 1 (June 17, 2024), ECF No. 16.[2]

On August 9, 2024, the parties represented that "NIH ha[d] completed its search for responsive records related to both [FOIA] requests[,]" and had identified 813 pages of potentially responsive records. See Joint Status Report at 2 (Aug. 9, 2024), ECF No. 17. NIH then

---

[2] Pursuant to the Court's June 17, 2024, Order, the parties were instructed to file all submissions in both cases in ICAN I. See id. at 2. Thus, all references in this Memorandum Opinion to submissions filed by the parties after June 17, 2024, are to submissions filed in ICAN I.

3

"completed the processing of its first interim release on October 1, 2024, and completed the processing of its second interim release in November 2024." Joint Status Report at 2 (Dec. 17, 2024), ECF No. 19.

On April 18, 2025, the parties represented that the "[p]laintiff ha[d] reviewed the records produced and the only remaining issue is that of attorney[s'] fees," and requested time to negotiate a resolution of that issue without the Court's involvement. Joint Status Report at 2 (Apr. 18, 2025), ECF No. 21. However, on June 18, 2025, the parties advised the Court that they had been unable to resolve the issue of fees, see Joint Status Report at 1 (June 18, 2025), ECF No. 22, and thus, the Court set a briefing schedule for the parties to make submissions regarding the plaintiff's request for an award of attorneys' fees, see Minute ("Min.") Order (June 26, 2025). In accordance with the Court's briefing schedule, the plaintiff filed its motion for attorneys' fees on July 24, 2025. See Pl.'s Mot. at 1. On August 21, 2025, the defendants filed their opposition to the plaintiff's motion, see Defs.' Opp'n at 1, and on September 11, 2025, the plaintiff filed its reply in support of its motion for an award of attorneys' fees, see Pl.'s Reply at 1.

## II.   STANDARD OF REVIEW

**A.   Motion for Attorneys' Fees**

The FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs, which [District of Columbia Circuit] case law has long described as fee 'eligibility' and fee 'entitlement.'" Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting Judicial Watch, Inc. v. U.S. Dep't

4

of Com., 470 F.3d 363, 368–69 (D.C. Cir. 2006)). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." Id. (quoting Judicial Watch, 470 F.3d at 368). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees." Id. "Finally, '[a] plaintiff who has proven both eligibility for and entitlement to fees must submit his [or her] fee bill to the court for [the court's] scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.'" Judicial Watch, 470 F.3d at 369 (quoting Long v. Internal Revenue Serv., 932 F.2d 1309, 1313–14 (9th Cir. 1991)).

### III.   ANALYSIS

**A.   Whether the Plaintiff Is Eligible for an Award of Attorneys' Fees**

As already noted, to be "eligible" for attorneys' fees, a FOIA plaintiff must have "substantially prevailed." Brayton, 641 F.3d at 525. "[A] complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Because the defendants disclosed the responsive records without the Court ordering them to do so, the plaintiff relies on the latter of the two provisions—subsection (II) of § 552(a)(4)(E)(ii)—as the basis for its fee request. See Pl.'s Mem. at 17.

This provision codifies the so-called "catalyst theory" of fee eligibility, pursuant to which a FOIA plaintiff "can prove fee eligibility by showing that its lawsuit 'substantially caused the government to release the requested documents before final judgment.'" Grand Canyon Tr. v.

5

Bernhardt, 947 F.3d 94, 96 (D.C. Cir. 2020) (quoting Brayton, 641 F.3d at 524–25).[3] At bottom, the Court's inquiry pursuant to the catalyst theory is whether the "institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation[.]" Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981). A "plaintiff has the burden of showing 'that it is more probable than not that the government would not have performed the desired act [i.e., production to the plaintiff of the responsive records] absent the lawsuit.'" Id. (quoting Pub. Citizen Health Rsch. Grp. v. Young, 909 F.2d 546, 550 (D.C. Cir. 1990)). And, the D.C. Circuit has "repeatedly held that whether a plaintiff's suit caused the production of documents 'is, of course, a question of fact entrusted to the District Court and the appellate court is to review that decision under a clearly-erroneous standard.'" Grand Canyon Tr., 947 F.3d at 96 (quoting Weisberg v. Dep't of Just., 745 F.2d 1476, 1496 (D.C. Cir. 1984)).

In assessing whether the plaintiff has met its burden, courts must consider the totality of the circumstances relating to the agency's disclosure. See Grand Canyon Tr. v. Zinke, 311 F. Supp. 3d 381, 389 (D.D.C. 2018), aff'd, 947 F.3d 94 (D.C. Cir. 2020). "Although 'the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation,'" Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 232 (D.D.C. 2011) (quoting Weisberg, 745 F.2d at 1496), "it is nonetheless a "'salient factor' in the

---

[3] The plaintiff argues at length in its motion for attorneys' fees that the District of Columbia Circuit erred in concluding that the 2007 Open Government Act revived the catalyst theory rejected by the Supreme Court in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001). See Pl.'s Mem. at 5–8. Despite the plaintiff's position, it conflicts with binding D.C. Circuit precedent holding that the 2007 Open Government Act established "that the catalyst theory applie[s] in FOIA cases." Davis v. U.S. Dep't of Just., 610 F.3d 750, 752 (D.C. Cir. 2010); accord Brayton, 641 F.3d at 525 ("Congress passed the OPEN Government Act of 2007 . . . [to] abrogate[] the rule of Buckhannon in the FOIA context and revive[] the possibility of FOIA fee awards in the absence of a court decree . . . . The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-Buckhannon form."). Thus, the Court must consider the applicability of the catalyst theory in determining whether the plaintiff is eligible for an award of attorneys' fees.

analysis," id. (Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec., No. 08-cv-2133 (EGS/DAR), 2009 WL 1743757, at *3 (D.D.C. June 15, 2009)); accord Pub. Law Educ. Inst. v. Dep't of Just., 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between a[] FOIA action and the release of documents may be taken into account in determining the existence vel non of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law."). And, "an agency's 'sudden acceleration' in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with [the] FOIA." Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec. ("EPIC II"), 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (quoting Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs., 794 F. Supp. 2d 29, 38 (D.D.C. 2011)).[4]

On the other hand, "[t]he causation requirement is missing when disclosure results not from the suit but from delayed administrative processing." Short v. U.S. Army Corps of Eng'rs, 613 F. Supp. 2d 103, 106 (D.D.C. 2009); see also Church of Scientology of Cal., 653 F.2d at 588 (quoting Cox v. U.S. Dep't of Just., 601 F.2d 1, 6 (D.C. Cir. 1979) ("If . . . an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit.")). That is because "Congress did not enact the fee-shifting provision of [the] FOIA to punish agencies for their slowness in processing FOIA requests, but to reward plaintiffs whose filing of lawsuits alters the government's slowness and brings about disclosure." Terris, Pravlik & Millian, LLP, 794 F. Supp. 2d at 38.

---

[4] The District of Columbia Circuit has declined to decide "whether a 'sudden acceleration' of production can, of itself, represent a 'change in position' within the meaning of" the FOIA, as amended by the OPEN Government Act of 2007. Grand Canyon Tr., 947 F.3d at 97–98. Thus, the Court will assess both whether NIH changed its position regarding responding to the plaintiff's FOIA requests as a result of this litigation, and whether NIH otherwise accelerated its processing in response to this litigation.

Here, the plaintiff argues that its initiation of the two lawsuits in in this consolidated case undoubtedly caused the defendants to process the responsive records because the defendants took no further action to produce the responsive records between the dates the defendants acknowledged receipt of the plaintiff's FOIA requests and the plaintiff's initiation of the lawsuits following those requests.  See Pl.'s Mem. at 22.  And, according to the plaintiff, because the defendants "voluntarily changed their position" and processed the responsive documents within four months of this Court granting the parties' motion to consolidate the two cases, the plaintiff is eligible for an award of attorneys' fees.  Id. at 23.

In response, the defendants represent that although NIH did not produce any responsive records until after the plaintiff filed their two cases, the delay in processing the plaintiff's FOIA requests was actually caused by the COVID-19 pandemic, which "triggered a dramatic surge in FOIA requests and an increase in the backlog at NIH."  Defs.' Opp'n at 8 (quoting id., Exhibit ("Ex.") 1 (Declaration of Gorka Garcia-Malene ("Garcia-Malene Decl.")) ¶ 9, ECF No. 24-1). In support of their position, the defendants provided the detailed declaration of Gorka Garcia-Malene, an NIH FOIA Officer, which the Court "accord[s] a presumption of good faith[.]" SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The Garcia-Malene Declaration details that the COVID-19 pandemic had a "profound impact" on NIH's FOIA program, Garcia-Malene Decl. ¶ 9, "given [NIH's] central role in the pandemic response[,]" id., ¶ 11, and that "in the first three [ ] years after the 2020 [COVID-19] outbreak, NIH received 6,226 FOIA requests[,]" compared to a total of 4,347 requests received in the three year period prior to the COVID-19 pandemic, id. ¶ 9.  According to the Garcia-Malene Declaration, "[s]ince January 1, 2020, NIH has received a total of 10,999 FOIA requests and has

8

successfully closed 10,010 of them—an extraordinary effort in the face of sustained, high demand." Id. ¶ 11.

In addition to the sheer volume of requests, the Garcia-Malene Declaration makes clear that the breadth and complexity of the FOIA requests submitted, as well as the need to consult other agencies, has complicated NIH's responsiveness to FOIA requests, thereby delaying the timelines by which they are able to process FOIA requests. See id. ¶¶ 13–14. The Garcia-Malene Declaration further represents that although NIH has sought to mitigate these delays by working to streamline its processing procedures and systems, "such changes could not eliminate delays altogether." Id. ¶ 15.

Indeed, the Garcia-Malene Declaration notes that the "[p]laintiff itself has contributed to the rising volume of FOIA requests submitted to NIH." Id. ¶ 21. According to the Garcia-Malene Declaration, "[p]rior to 2020, [the p]laintiff had submitted only four [] FOIA requests to NIH[,]" but submitted 27 in 2020, 32 in 2021, 48 in 2022, 57 in 2023, 65 in 2024 and 37 already in 2025. Id. Moreover, the "[p]laintiff has filed lawsuits against NIH [regarding 39] of those requests, resulting in [27] separate litigations." Id.

Despite these circumstances, the Garcia-Malene Declaration details NIH's actions in response to each of the plaintiff's FOIA requests at issue in this consolidated case. Regarding FOIA Request 56560, the Garcia-Malene Declaration confirms that after acknowledging receipt of the plaintiff's request on June 17, 2021, see id. ¶ 24, NIH notified the plaintiff on May 26, 2022, that it had referred the request to NHGRI, see id. ¶ 25. That same day, "NIH sent a request to the Center for Information Technology to conduct a search of David Schleuter's account for all emails" responsive to FOIA Request 56560. Id. ¶ 26. As indicated above, after the plaintiff contacted NIH in August 2022 requesting an estimated date of completion, NIH gave an

9

estimated date of September 21, 2022, see id. ¶ 27, and on September 23, 202, NIH advised the plaintiff that it was extending that date to November 30, 2022, see id. ¶ 28. The Garcia-Malene Declaration represents that the date "was extended because review was required by the program officials at the All of Us Research Program of NIH and they needed additional time for their review." Id.

Regarding FOIA Request 56559, the Garcia-Malene Declaration confirms that NIH acknowledged receipt of the plaintiff's request on June 17, 2021, see id. ¶ 33, and that "[o]n March 14, 2022, NIH sent a request to the office of the All of Us Research Program for a search of Dr. Sheri D. Schully's emails" responsive to that FOIA request, id. ¶ 34. That program office provided those records to the NIH FOIA office "in early October, 2022[,]" and NIH began reviewing those records on October 13, 2022. Id. Then, "[i]n December 2022, the NIH FOIA Office and NHLBI FOIA office discussed whether the two requests[—i.e., FOIA Requests 56560 and 56559—]were duplicates and it was decided that they were not but that they overlapped." Id. ¶ 35.

Based on the Garcia-Malene Declaration's representations regarding NIH's communications and coordination regarding the plaintiff's two FOIA requests prior to the plaintiff filing suit, as well as its representations—which the plaintiff does not dispute—regarding the unavoidable delays caused by the COVID-19 pandemic and the associated surge in FOIA requests submitted to NIH, the Court concludes that the plaintiff has not established an inference that NIH "forgot about, or sought to ignore" the plaintiff's requests. Weisberg, 745 F.2d at 1496.

Contrary to the plaintiff's position that "voluntary compliance was not forthcoming" because NIH's "behavior shows it was not prioritizing the request until legally compelled to do

so[,]" Pl.'s Reply at 7, prior to the initiation of the plaintiff's lawsuits, NIH had in fact requested that searches be conducted, coordinated with other offices, and had even commenced its review of at least some of the responsive records. Thus, it appears clear that NIH intended to process the plaintiff's requests, rather than "stonewall[]" the plaintiff, as it alleges. Pl.'s Reply at 9; see Calypso Cargo Ltd. v. U.S. Coast Guard, 850 F. Supp. 2d 1, 5 (D.D.C. 2011) (denying a motion for attorneys' fees under the catalyst theory because "multiple divisions within the Coast Guard had already begun coordinating and processing the plaintiffs' request before [the] plaintiffs filed their lawsuit").

Further, the record shows that the NIH's delay in processing the plaintiff's requests was clearly the result of "delayed administrative processing" caused by the COVID-19 pandemic, Short, 613 F. Supp. 2d at 106, which undermines the plaintiff's position that its lawsuits substantially caused the agency to change course and produce the records. And, finally, although the plaintiff argues that NIH's "lack of responsiveness" contributes to an inference that the agency did not plan to act on its requests, Pl.'s Reply at 10, NIH's "failure to communicate [with the plaintiff regarding its actions in response to the plaintiff's request prior to the initiation of the lawsuits], while regrettable, does not alone overcome its assurances that it intended to process [the plaintiff]'s request . . . and experienced delays due to [the] backlog[ it was experiencing,]" Am. Wild Horse Campaign v. U.S. Bureau of Land Mgmt., No. 22-cv-3061 (CRC), 2024 WL 3967256, at *3 (D.D.C. Aug. 26, 2024).

Nor has the plaintiff established that there was a "sudden acceleration" in NIH's processing of the plaintiff's FOIA requests after the plaintiff filed suit, such that the Court could conclude "that the lawsuit[s] substantially caused the agency's compliance with [the] FOIA." Elec. Privacy Info. Ctr., 218 F. Supp. 3d at 41. Although the plaintiff argues that because NIH's

11

production "within months" of the plaintiff filing its lawsuits establishes a "sudden acceleration" in NIH's processing, Pl.'s Reply at 8–9, the case law the plaintiff cites is inapposite.  In EPIC II, the agency in fact conceded that it "accelerated" the search for responsive records in response to EPIC's lawsuit.  See EPIC II, 218 F. Supp. 3d at 42.  And, consistent with what occurred here, "courts have held that production delays of more than a month following a suit's filing make it 'seem[] more likely, in fact, that the documents would have been processed in the same manner, with the same result, regardless of whether litigation was filed.'"  First Look Media Works, Inc. v. U.S. Agency for Glob. Media, No. 20-cv-3499 (TJK), 2024 WL 4262773, at *5 (D.D.C. Sept. 23, 2024) (quoting Am. Wild Horse Campaign, 2024 WL 3967256, at *3).  Thus, because NIH did not process its first interim release until October 2024, nearly ten months after the plaintiff filed its first lawsuit, nearly seven months after the plaintiff's second lawsuit was filed, and approximately four-and-a-half months after the Court consolidated the two cases, the Court concludes that the plaintiff has failed to establish that its filing of the two lawsuits caused a "sudden acceleration" of NIH's processing of its requests.

Accordingly, the Court concludes that the plaintiff has not adequately shown that its lawsuits were the catalyst for the defendants' release of records, and it is therefore not eligible for an award of attorneys' fees under the FOIA.  Thus, because the plaintiff has not shown that it is eligible for an award of attorneys' fees under the FOIA, the Court need not determine whether it is entitled to such an award and must instead deny the motion for an award of such fees.

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the plaintiff's motion for attorneys' fees.

**SO ORDERED** this 4th day of December, 2025.[5]

REGGIE B. WALTON<br>
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.